# In the United States Court of Federal Claims

No. 23-125
Filed: September 24, 2024

|  |
|---|
| **RANCHO VISTA DEL MAR, et al.,** *Plaintiffs*, v. **THE UNITED STATES,** *Defendant.* |

*Roger J. Marzulla* and *Nancie G. Marzulla*, Marzulla Law, LLC, Washington, D.C., for Plaintiffs.

*Anthony P. Hoang,* Attorney of Record, *Todd Kim*, Assistant Attorney General, Environment & Natural Resources Division, U.S. Department of Justice, with *Robert Walker*, *Thomas Miller*, and *Michael Felts*, Of Counsel, United States Department of Homeland Security; also joined by *Daniel Inkelas* and *Amy Kirby*, Of Counsel, United States Army Corps of Engineers, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

The standard for adequate pleadings is plausibility, not perfection. In this case, a group of property owners with land bordering Mexico initiated suit against the United States for an alleged uncompensated taking in violation of the Fifth Amendment. The dispute arose after the government leased the property owners' land planning to construct a border fence; this plan was later terminated before construction was final, leaving a gap in the nation's border wall. Following the project's abandonment, claimants asserted that the resulting debris, continued immigration flow, and environmental damage constituted a physical taking of their property.

The pending motion presents the second iteration of the United States' effort to garner dismissal of those claims. In its initial, partially successful motion, the United States argued that it could not be held liable for the action or inaction of third parties. The Court dismissed the claims related to increased immigration and denied the United States' motion as it related to claims on construction debris and environmental damage. In an Amended Complaint, Plaintiffs submitted additional information regarding the construction debris and the United States' physical invasion, as ordered by the Court, and reframed many of the allegations regarding immigrant flow, which the Court did not order. The United States persists with its original arguments. The Court finds that Plaintiffs adequately addressed the concerns raised in the

Court's prior opinion and crossed the threshold of plausibility. Consequently, the United States' repetitive Motion to Dismiss, (Def.'s Mot. to Dismiss. ("Def.'s Mot."), ECF No. 32), is denied.

### I.   Background[1]

Plaintiffs, Rancho Vista Del Mar, Otay International, LLC, Otay Mesa Property, L.P., and D&D Landholdings (referred to singularly as "Rancho Vista"), are the owners of 791.11 acres of borderland in San Diego County, California. (Am. Compl. at 3–4, ECF No. 26). Rancho Vista initiated this suit to recover for "the physical taking of an easement for ingress and egress over [Plaintiffs'] properties[,]" without payment of just compensation, in violation of the Fifth Amendment. (*Id.* at 1).



AM. COMPL. EX. 1, ECF NO. 26-1.

Semantics describing the events leading up to the "taking" are disputed. Rancho Vista alleges that the taking here stems from the Government's active construction of a "700-foot-wide *de facto* gateway in the border fence immediately next to the Rancho Vista properties[.]" (*Id.*).

---

[1] A comprehensive recitation of facts can be found in the Court's Opinion regarding the United States' previous Motion to Dismiss. *Rancho Vista Del Mar v. United States*, 169 Fed. Cl. 299, 301 (2024). The Court adopts the factual recitation from that Opinion and will only discuss the facts relevant to the current motion.

The United States characterizes the events as *inaction*, stating that "the Government did not finish construction of a 700-foot section of border fence on land next to Plaintiffs' properties." (Def.'s Mot. at 4). And the Court has described the series of events as "abandonment of the construction site[.]" *Rancho Vista Del Mar v. United States*, 169 Fed. Cl. 299, 302 (2024); (docketed at ECF No. 23). Putting aside the trees for the forest, what we know is that the United States began constructing a border wall ("the San Diego 4"); before the wall was complete and contiguous, the United States stopped construction; the result is a 700-foot gap on federally owned land next to Rancho Vista's properties. (*See* Am. Compl. at 9–10 ("On March 21, 2019, Rancho Vista deeded a parcel of 17.04 acres to the Government to construct the border fence.") ("As constructed, the San Diego border fence now runs continuously from the Pacific Ocean to a point near the Rancho Vista properties, where the Government has left an open and unfenced gateway about 700 feet wide, then continues eastward for several miles."); *see also* Am. Compl. Ex. 40, ECF No. 26-40).



AM. COMPL. EX. 5, ECF NO 26-5.

Rancho Vista filed this suit in 2023 stemming from the lingering effects of the halt in construction. (*See generally* Compl., ECF No. 1). Rancho Vista initially asserted that the gap in the border wall facilitated increased undocumented immigration across their land, leading to a taking. (Compl. at 10). As to the deeded property, Rancho Vista claimed the United States did not complete its work nor cleanup in violation of their previous agreement. (*Id.* at 8). Rancho Vista argued that the United States abandoned the site, leaving behind specialized water pipes intended to manage stormwater runoff. (*Id.*). This, it claims, led to erosion and sediment buildup on the properties due to the natural flow of rainwater. (*Id.* at 9–10).

After the United States' initial motion to dismiss, (ECF No. 10), the Court rejected Rancho Vista's assertion that unlawful trespass by migrants could constitute a compensable taking. *Rancho Vista Del Mar*, 169 Fed. Cl. at 304 ("Rancho Vista's claim as to immigrant flow must be dismissed for failure to state a claim."). The Court also iterated the well-settled law that takings claims rooted in the government's inaction are foreclosed, but not those that are direct results of "affirmative acts." *Id.* at 305; *Bd. of Supervisors of Issaquena Cnty v. United States*, 84 F.4th 1359, 1365 (Fed. Cir. 2023) (". . . as we have held, 'takings liability must be premised on affirmative government acts.'") (citing *St. Bernard Parish Gov't v. United States*, 887 F.3d 1354, 1362 (Fed. Cir. 2018)). The Court found that to survive the motion to dismiss, those affirmative "allegations must be clearly pled in the Complaint[,]" and the initial Complaint, "[fell] short of that standard." *Id.* (internal citations omitted).

As to Rancho Vista's environmental claims, the Court allowed it to amend its Complaint to articulate the correct theory about inaction and causation. *Id.* at 306 (relying on *Bd. of*

3

*Supervisors*, 84 F.4th at 1370 ("[W]here the plaintiff's allegations in its brief on appeal may be sufficient to state a claim and where the government does not assert meaningful prejudice—we believe that we can appropriately exercise our discretion to provide [plaintiffs] an opportunity to seek leave to amend one last time and attempt to state a plausible takings theory based on government action."). And so, while the Court found that Rancho Vista could proceed with its environmental impact and erosion claims, it allowed amendment to "specify the degree of impact on each identified parcels and to allege any additional facts needed to plausibly establish a claim for erosion damage." *Id.*

The Opinion on the initial Motion to Dismiss did not shy from directives. The Court found that Rancho Vista's pleading should explain "why additional construction under San Diego 4 left Rancho Vista in a worse place than it would have been with the prior wider gap in the border wall." *Rancho Vista Del Mar*, 169 Fed. Cl. at 305 (citing 84 F.4th at 1369). The Court stated that a "takings theory based on what the United States has constructed thus far" as Rancho Vista argued in its response brief, was an example of a "sole affirmative act[ ] . . . that might form the basis" of a valid takings claim. *Id.* (internal citations omitted). Notably, though, the Court iterated that amendment of the Complaint "*would not* resolve the Court's main finding that the harms caused by third parties in this case cannot be attributed to the United States." *Id.* at 306 (emphasis added). Thus, "while the Court [found] that Rancho Vista [could] proceed with its environmental impact and erosion claims," any claims related to immigrant crossing were dismissed. *Id.*

Rancho Vista returned from the drawing board on February 23, 2024. (*See generally* Am. Compl.). The amendment removed one claimant and, in reasserting its compensation claim, recharacterized the following events that gave rise to its claim: "The Government Construct[ed] a Gateway for Aliens to Reach Rancho Vista's Property[,]" (*id.* at 7); and "The Government Has Caused a Dramatic Surge in Undocumented Alien Traffic Over Rancho Vista's Property, Taking an Uncompensated Easement for Ingress and Egress[,]" (*id.* at 10).

Specifically, Rancho Vista's amended claims include that "[t]he Border Patrol's use of [all-terrain vehicles, also known as] ATVs and other equipment" and the agency's apprehension, processing, and transportation of the undocumented migrants "exacerbate" the adverse environmental impacts. (Am. Compl. at 2). Because of the "new open-borders policy" launched in January 2021, Rancho Vista claims that there has been a significant increase of undocumented "aliens entering the United States in the San Diego Sector," and, as a result, there has been unlawful migrant travel, interception, and detention, as well as deployment of Border Patrol agents and equipment, at the *de facto* "Rancho Vista gateway" and on the subject properties. (*Id.* at 10–11). Rancho Vista claims that the Border Patrol's daily activities to and from this "[Rancho Vista] gateway across [Plaintiffs'] properties," which include ATV patrols, as well as the location of equipment at various



AM. COMPL. EX. 11, ECF NO. 26-11.

sites to track illegal migrant movements, "trample and damage [Plaintiffs'] environmentally sensitive land." (*Id*. at 11).

Rancho Vista asserts that, but for the recently-enacted border policies, it "would not have experienced the dramatic surge in unauthorized entry onto their parcels, Border Patrol activity on [Plaintiffs'] properties, the extensive damage and destruction of the land and fragile vegetation and fauna species habitat, and the destruction of [Plaintiffs'] right to exclude others from [Plaintiffs'] parcels." (*Id.*). As a result, Rancho Vista claims that the United States' actions resulted in "the taking of an easement for ingress and egress over [Plaintiffs'] lands and habitat[.]" (*Id.*).

## II.   Analysis

Under the premise that Rancho Vista failed to follow the Court's direction to cure its defective complaint, the United States moves for dismissal, reviving many of its previous arguments. (*See generally* Def.'s Mot.). Primarily, the United States asserts that Rancho Vista "fail[s] 'to allege additional facts with regards to its construction debris and environmental damage claims' that adequately state a claim for which the Court can grant relief." (*Id.* at 4). The United States reads Rancho Vista's Amended Complaint to "recharacterize the gap that the United States had left in its construction of the border wall[,]" as an active, affirmative construction of a 700-foot *de facto* gateway. (*Id.* (citing Am. Compl. at 1)). Thus, the United States reasserts the argument that a taking, in this instance, cannot be based on inaction. (*Id.* at 5–7). It goes on to argue that "any claim premised on unlawful migrants entering Plaintiffs' property must be dismissed, because the United States is not liable for the actions of third parties, particularly in this case where any alleged action would be in violation of Federal law." (*Id.* at 7 (internal citations omitted)).

For its part, Rancho Vista responds that its amended claims are grounded in action, not *inaction*. (Pl.'s Resp. at 9–11, ECF No. 33). It asserts that the United States misunderstands Rancho Vista's revised claims, as well as the landscape of takings case law. (*Id.* at 9–15). Specifically, Rancho Vista states that the Amended Complaint properly alleges a permanent physical occupation by "government agents, their vehicles, and equipment of the subject properties." (*Id.* at 20–23). Accepting all its allegations as true, the Court concludes that Ranch Vista has plausibly alleged affirmative actions by the United States that could warrant relief.

Under RCFC 12(b)(6), the Court can dismiss a claim for "failure to state a claim upon which relief can be granted." Such a motion may be granted only "when the facts asserted by the claimant do not entitle [it] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). That occurs when "no additional proceedings would enable the plaintiff to prove facts entitling him or her to prevail." *Northrop Grumman Corp. v. United States*, 63 Fed. Cl. 38, 41 (2004). In deciding a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(6), the Court views the facts in the light most favorable to the plaintiff and accepts as true all factual allegations — but not conclusory legal assertions — contained in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see also Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019). For a claim to be properly stated the pleading "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). However, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Those facts must yield a "reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. A plaintiff may not simply plead "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

As to the United States' argument that it cannot be liable for actions by third parties, (Def.'s Mot. at 7–9), any ruling on this would result in an echo chamber. This issue is mooted by the law of the case doctrine as it has been decided. *Rancho Vista Del Mar*, 169 Fed. Cl. at 301 ("Because the United States cannot be held liable for third parties' actions, the Court dismisses Rancho Vista's Fifth Amendment claims based on increased immigration flow onto their property."). The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983), *decision supplemented*, 466 U.S. 144 (1984). The United States Supreme Court has stated that "the doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona*, 460 U.S. 618 (citation and footnote omitted), reh'g denied, 462 U.S. 1146 (1983), supplemented by 466 U.S. 144 (1984); *see also Agostini v. Felton*, 521 U.S. 203, 236 (1997). Nevertheless, the "law of the case doctrine is limited to issues that were actually decided, either explicitly or by necessary implication, in the earlier litigation." *Toro Co. v. White Consol. Indus., Inc*., 383 F.3d 1326, 1335 (Fed. Cir. 2004) (citation omitted) (emphasis added), *reh'g en banc denied* (2004), *cert. denied,* 544 U.S. 948 (2005); *see also Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 657 (Fed. Cir.), *cert. denied*, 474 U.S. 902 (1985).

The Court ruled in January that Rancho Vista was barred from basing its takings claim on the actions of third parties. *Rancho Vista Del Mar*, 169 Fed. Cl. 303–04 ("[T]he Court rejects Rancho Vista's argument that unlawful trespass by migrants can constitute a compensable taking."). The United States is correct in that Rancho Vista's amendment does reflect third-party actions, namely:

1) "Because the border fence blocks entry to the east and west of the Rancho Vista gateway, undocumented aliens are funneled toward the open gateway, across the border, and onto Rancho Vista's property daily." (Am. Compl. at 10).

2) "The individuals entering through the Rancho Vista gateway immediately find a path, seeking to traverse about a mile across the privately owned land to reach a public road away from the border." (*Id.*).

3) "Aliens regularly travel from the gateway across Rancho Vista's properties to roads away from the border." (*Id.* at 11).

The Court did not order Rancho Vista to put lipstick on its existing claim, but rather made substantive rulings as to whether it could go forward. The parties should make no mistake—the

allegations relating solely to illegal immigrant crossing cannot form the basis of Rancho Vista's takings claim.[2]

Complaints often allege facts for atmosphere or effect; "plaintiffs need not prove the truth of every paragraph in a complaint to succeed in their suits." *Hayes v. Dep't of Educ. of City of New York*, 20 F. Supp. 3d 438, 446 (S.D.N.Y. 2014). The reality is that pleadings do not always qualify as perfect; but the law requires no such perfection. *See Twombly*, 550 U.S. at 557. So while the facts surrounding third party cannot serve as the basis for a takings claim, they are not the only facts and theories alleged. There is no reason to require amendment or strike the relevant portions of Rancho Vista's pleading. In other words, damages resulting purely from the acts of trespassing immigrants do not constitute a takings, but neither are these facts erased from the stark reality that exists along this portion of the border. Damages resulting from acts of the United States in *response* to the increased migrant flow may be actionable. The United States cannot create a situation adversely impacting Rancho Vista's properties, claim inaction, and then permissibly and continually intrude on that property with its agents and equipment.

The United States posits that Rancho Vista's amended claims fall short of pleading standards because they are reframed versions of government inaction. (Def.'s Mot. at 5 (citing *St. Bernard Parish*, 887 F.3d at 1360–62 (Fed. Cir. 2018) (overturning trial court opinion and holding that "[o]n a takings theory, the government cannot be [held] liable for failure to act, but only for affirmative acts"); *Love Terminal Partners, L.P. v. United States*, 889 F.3d 1331, 1341 (Fed. Cir. 2018) (holding that Congress's failure to repeal an amendment was not actionable because "government inaction cannot be the basis for takings liability"); *Bench Creek Ranch, LLC v. United States*, 855 F. App'x 726, 726-27 (Fed. Cir. 2021) (upholding dismissal of takings claim based on failure to act); *Alves v. United States*, 133 F.3d 1454, 1458 (Fed. Cir. 1998) (affirming dismissal of takings claim based on action by a third party because "[t]here was no governmental action [in that case] at all"); *see also Ga. Power Co. v. United States*, 633 F.2d 554, 557 (Ct. Cl. 1980) (holding that the Government's failure to regulate mast and antenna heights was not actionable because "a taking may not result from [] discretionary inaction")). The

In *St. Bernard Parish Government v. United States*, the Federal Circuit rejected a takings claim, explaining that while "the theory that the government failed to maintain or modify a government-constructed project may state a tort claim, it does not state a takings claim."[3] 887 F.3d at 1358, 1360. Under *St. Bernard*, the property loss compensable as a taking must be linked to an "asserted invasion [that] is the direct, natural, or probable result of authorized government

---

[2] The Court understands that Rancho Vista disputes this (Pls.' Resp. at 11 n.65, ("Rancho Vista acknowledges that the Court, in granting the Government's motion to dismiss the original complaint, held that invasion by undocumented entrants alone was not a taking. Rancho Vista provides this argument here to preserve its position regarding that issue."), 17–20), and acknowledges preservation of those arguments.

[3] Here, when directly asked if the United States claimed that its action sounded in tort, the United States demurred. (Second OA Tr. 25:6–15).

action." *Id*. at 1360. Under *St. Bernard Parish*, property owners must also establish that they would not have suffered the injury "in the ordinary course of events, absent government action." 887 F.3d at 1362 (causation analysis). In the flooding context, this means plaintiffs must show that their land is *more* burdened by flooding than it would have been prior to construction. *Bd. of Supervisors of Issaquena Cnty v. United States*, 84 F.4th 1359, 1366 (Fed. Cir. 2023).

The Federal Circuit further reiterated that *St. Bernard Parish* forecloses takings claims rooted in the government's inaction, but not those that are direct results of "affirmative acts." *St. Bernard Parish*, 887 F.3d at 1362; *Compare Arkansas Game and Fish Commission v. United States*, 568 U.S. 23, 27–28 (2018) (noting a basis for a takings claim existed when the government released water from a "government constructed and operated dam" which flooded the plaintiff's property), *and Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1352 (Fed. Cir. 2003) (finding the United States Postal Service constructed a facility that increased water runoff onto plaintiff's property), *with United States v. Sponenbarger*, 308 U.S 256, 265 (1939) (finding no taking when the United States constructed flood protection system that was inadequate to protect plaintiff's property from a pre-existing flood hazard), *and Georgia Power Co. v. United States*, 633 F.2d 554, 527 (Ct. Cl. 1980), *cert denied*, 450 U.S. 981 (1981) (holding the United States' failure to regulate sailboat masts heights that intruded on plaintiff's property was "discretionary inaction" which cannot form the basis for takings liability absent a duty to act).

The Court directed Rancho Vista to conform with *St. Bernard Parrish*, and "explain why additional construction left Rancho Vista in a worse place than it would have been with the prior wider gap in the border wall." *Rancho Vista Del Mar*, 169 Fed. Cl. at 305 (citing 84 F.4th at 1369 ("To the extent that the Board is alleging that the construction of the Backwater Project caused flooding," as opposed to government inaction, "the complaint fails to explain (or even directly allege) how the Project brought about a worse result than would have occurred anyway."); *see also e.g., In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 138 Fed. Cl. 658, 662 (Fed. Cl. 2018) (causation was satisfied when the Army Corp had conceded that under its flood control project the surrounding areas might be flooded, leaving plaintiffs worse off, and that the project "could result in lawsuits against the Corps of Engineers for flooding private lands")).

Rancho Vista admittedly forfeits its erosion and environmental claims. (Second OA Tr. 4:24–5:2, ECF No. 36). Reading Rancho Vista's Amended Complaint in a favorable light, it alleges other affirmative acts on behalf of the government, including:

1) "The border patrol agents either detain the individuals at the gate or deploy agents and equipment, including ATVs— all over the subject properties—to intercept the individuals on the subject properties." (Am. Compl. at 10).

2) "During patrol, the Border Patrol's all-terrain vehicles trample and damage Rancho Vista's environmentally sensitive land." (*Id.* at 11).

3) "The Border Patrol also stations trailer-mounted sensor and light towers at various locations on Rancho Vista's properties to detect alien traffic, hauling the towers from one

location to another at its own discretion and without consent from or notice to Rancho Vista."[4] (*Id.*).

4) "Due to US policies, Border Patrol activity on its properties, the extensive damage and destruction of the land and fragile vegetation and fauna species habitat, and the destruction of their right to exclude others from their parcels." (*Id.*).

5) "Had the Government not initiated these programs and policies beginning in January 2021, authorizing and encouraging undocumented aliens to enter the United States at the Rancho Vista gateway and elsewhere, Rancho Vista would not have experienced the dramatic surge in unauthorized entry onto their parcels." (*Id.*).

Whether there is merit to Rancho Vista's claims or whether facts show that its claims are actually tied to inaction remains to be seen. It is speculative, but speculation cannot overcome the low standard of plausibility. *Twombly*, 550 U.S. at 557 ("To survive a motion to dismiss the allegations in the complaint must raise a right to relief above the speculative level."). These recently updated allegations push Rancho Vista's claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). Thus, they survive the United States' Motion.

During oral argument on this second Motion to Dismiss, the United States argued that any Border Patrol activities occurring on Rancho Vista's property were privileged as "legitimate law enforcement" functions. (Second OA Tr. 22:25–23:7). While there may be some merit to the United States' assertion, this argument was not raised in its Motion to Dismiss. (*See generally* Def.'s Mot.). A court need not consider new arguments raised for the first time at oral argument. *Raytheon Co. v. United States*, 96 Fed. Cl. 548, 555 (2011). Therefore, the Court declines to decide this issue at this stage of proceedings.

### III.    Conclusion

Complaints must simply cross a threshold of plausibility. Rancho Vista has crossed that threshold. Accordingly, the Court **DENIES** the United States' Motion to Dismiss, (ECF No. 32). Pursuant to this Opinion, the Court reiterates that while claims relating to damages arising from the illegal acts of third parties are precluded, discovery regarding these facts are not constrained by this opinion to the extent that they relate to the government's response.

---

[4] Placement of sensors on Plaintiffs' land to detect migrants would seem to fairly fall within *Otay Mesa*. *Otay Mesa Property, L.P. v. United States*, 670 F.3d 1358, 1365 (Fed. Cir. 20212) (finding the Border Patrol's blanket easement "to install, maintain, and service sensors" on plaintiff's property "constituted a permanent physical taking").

      Given the pendency of this case and its procedural history, the Court believes that it is necessary to expedite the initial filings. The United States is directed to file a responsive pleading on **October 15, 2024**. The parties' Joint Preliminary Status Report shall be filed on or by **November 12, 2024**. The parties shall propose an expeditious schedule and immediately engage in discovery efforts.

      **IT IS SO ORDERED.**



s/    David A. Tapp  
DAVID A. TAPP, Judge